LUIS COLL WATLINGTON, Petitioner and Appellant, v. DIEGO BIASCOECHEA, Defendant and Appellee.

No. 7641. Argued December 17, 1937.—Decided February 24, 1938.

*Francisco M. Susoni, Jr.,* for appellant.   *Dubón & Ochoteco* for appellee.

MR. JUSTICE WOLF delivered the opinion of the Court.

Dr. Luis Coll Watlington is a dentist with an office open at 261 Ponce de León Avenue, in Santurce.  Directly across the street is located a polyclinic belonging to Dr. Diego Biascoechea, which includes among its various departments one in dental surgery.  Both offices have established a system by which their professional services are offered to the poorer classes at a very low charge per specific treatment.  Consequently their clientele is drawn more or less from persons with small incomes and naturally a certain amount of professional rivalry exists between them.

On June 8, 1937, Dr. Coll Watlington filed a petition for an injunction, whereunder he sought to have Dr. Biasco-

echea enjoined from placing or stationing certain men in front of the petitioner's office. He alleged that these men, pursuant to defendant's instructions, constantly attempted to divert the petitioner's clientele by telling prospective patients that they could be painlessly attended at the defendant's polyclinic and that they would be unable to enjoy such relief at petitioner's office because of the inferior quality of his instruments and equipment. Furthermore, he alleged that these men told all his clients that they should go to defendant's polyclinic. In conclusion, it was averred that these acts interfered with the free enjoyment of the petitioner's property and profession and constituted a nuisance, the continuance of which could and should be enjoined by a court. Incidentally it was alleged that these disturbances had been going on for two years prior to the filing of the petition.

On the 18th of June, 1937, the lower court, in response to the proper motion and relying on the affidavits attached thereto, but subject to a $500 bond, issued a temporary restraining order against Dr. Biascoechea with a rule to show cause why the court should not grant a preliminary injunction. The defendant filed an answer to cover both the petition and the rule to show cause wherein he raised several "objections of law" *(objeciones de derecho)* and various defenses of fact. The parties submitted the entire case on the evidence taken at the hearing which on the rule to show cause was held on June 28 and July 12, 1937.

In denying the injunction, the district court of San Juan said:

"We shall pass over the different questions of law which the defendant raises in his answer and which he discusses in his brief, inasmuch as in our opinion all that appears from the state of facts in this case, is a violation or breach of the rules of professional ethics."

The trial judge concluded that "this ought to be decided by the professionals themselves, and a court of equity should not establish the rules of such ethics, for in Puerto Rico all

the professions have their boards or associations to supervise the practice of the profession."

The petitioner appealed from the judgment of the lower court and assigns four errors, three of which concern the theory of the trial court, its analysis of the evidence and the conclusion finally adopted. The fourth assignment attacks the correctness of the actual judgment.

This is a case, which by the delicate nature of its subject matter, has required more than the ordinary amount of study and consideration. We have constantly kept in mind the rights of the parties and have tried to foresee the consequences of our ultimate judgment. If petitioner's allegations of fact are accepted as true, his position must indeed be uncomfortable and annoying.

The lower court did not pass upon the legal defenses presented by the appellee. Their discussion will serve as an aid to the better understanding of the conclusion we have reached.

■■ Three of them attacked the sufficiency of the allegations in failing to state that (*a*) the petitioner had suffered irreparable injury, (*b*) the statements of the defendant's agents with regard to the petitioner were false, and (*c*) the latter had no adequate legal remedy.

From the special circumstances of the case we think the irreparable injury was necessarily present. It is true that the petitioner, in his brief, states that the actions of the defendant have not deprived him of any clients, but the present cause of action, as we have understood it, is not dependent alone on a loss of professional business, although that prospect must play a part, but on the personal discomfort and strain under which the petitioner is obliged to work. This condition causes a certain amount of injury or damage, which however small, is irreparable. Petitioner's complaint therefore was sufficient in this regard.

The second omission is unimportant. We are not dealing with a suit for libel. The alleged statements of the defend-

ant's agents were prima facie calculated to injure the reputation and good name of Dr. Luis Coll Watlington and to render the practice of his profession more difficult. The truth or falsity of the statements was a matter of opinion inasmuch as it involved the skill with which the petitioner treated his patients as well as the adequateness of his equipment.

The allegation contained in paragraph ten of the complaint was sufficient to cover the inadequacy of the remedy at law.

■ The other three legal defenses presented to the petition were that no injunction lay either for slander or libel or for a breach of professional ethics, and that the petitioner had been guilty of laches.

The defense of laches is not a good one. If the defendant was responsible for the acts complained of, each day that passed under the same state of facts created a new cause of action and the right to a remedy either at law or in equity was continued or revived.

■ As to the unavailability of the injunctive remedy to prevent or avoid a slander, libel or a breach of professional ethics, we are inclined to agree with the lower court. The real question in the case before us, however, is whether the discomfort, annoyance or disturbance accompanying the commission of acts which may give rise to another civil or criminal action, is in itself sufficent to justify the intervention of equity. Incidentally likewise the possible ultimate loss of clients.

As a pure question of law we feel that the mere existence of concurrent criminal or civil liability should not deprive a petitioner from his relief in equity. (See e. g. 46 C.J. 762, Sec. 370). The difficulty lies in being able to distinguish those cases in which the act as a nuisance may be separated from the act as a crime. Furthermore, the importance and magnitude of that act and its effect on the property or life of the plaintiff must be considered.

We have before us a difficult case. If the allegations of Dr. Coll Watlington are true, the defendant may be open to an action for slander. The discomfort and annoyance accompanying the acts complained of, could then be taken into consideration when determining the amount of the damages. We cannot avoid feeling, however, that the manner in which the possible slander is being committed is of no common occurrence. It is akin to persuasive picketing of the plaintiff's clientele. Defendant's conduct suggests unfair competition. The petitioner, nevertheless, relies exclusively on the existence of a nuisance.

Section 277 of the Code of Civil Procedure (1933 ed.) which defines a nuisance, reads:

"Anything which is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action. Such action may be brought by any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance, and by the judgment the nuisance may be enjoined or abated, as well as damages recovered."

A more comprehensive statute can hardly be imagined. Its precepts must be interpreted reasonably. The situation before us is an unusual one and we have been unable to find any decision squarely in point as to the facts, but that should not deter us, should we become convinced of the justice of the petitioner's pretensions. Appellee has cited several cases which deny the jurisdiction of an equity court to restrain the publication of a libel. In general, we do not disagree with such a principle, but there is here a little more than the simple commission of a slander or libel. It is alleged that defendant's agents stand guard directly in front of the entrance to petitioner's office and question or annoy every client who arrives thereat. Dr. Coll Watlington is constantly receiving complaints from his patients, and as will be seen in discussing the evidence, has more than once had to seek

the assistance of those in charge of maintaining the public peace. The petitioner has a right to practice his profession in an unmolested manner and free from interference of any sort. The actions of the appellee's employees, if satisfactorily proved, have disturbed the petitioner in the practice of his profession and consequently in his enjoyment of life. We think the statute covers the case.

Let us now analyze the evidence which was before the lower court for consideration. The trial judge described it in the following terms:

"The evidence does not disclose that any client has been misled. All that it reveals is a competition between the parties to obtain the greatest number of clients, inasmuch as we can not ignore the evidence of the defendant. It is not so lacking in facts as to permit as to establish an absolute preponderance in favor of the petitioner with regard to the continuous activities to deprive each other of his clientele."

The first witness for the petitioner was Rafael B. Díaz, Chief of Police for the District of San Juan. He stated that he had often been called by Dr. L. Coll Watlington and his attorney, Mr. Susoni, to receive complaints as to the stationing of certain individuals in front of the former's dental office at stop 26 in Santurce; that he went there on one occasion and found a man so stationed, told him to leave, and the man entered the defendant's clinic; that he also found a man by the name of Verdejo before defendant's polyclinic and told him and the man already mentioned, to stop their annoyances.

The next witness to take the stand was Marcelino Romaní, then District Attorney at San Juan. His testimony brought out the fact that petitioner had complained of certain men placed before his office who discredited his practice, and that petitioner told the witness that defendant had placed the men there. Romaní went on to say that he called Dr. Biascoechea, who denied everything, but admitted that he had had to engage a man by the name of Verdejo to tell patients

where defendant's polyclinic really was located. The witness finally stated that as a result of an investigation he had charged Verdejo with slander of petitioner's person and profession and fixed a $500 bail bond which had been put up by Dr. Rivera Aulet and Dr. Biascoechea.

The petitioner himself testified that his office in Santurce is open between 8 and 10 in the morning and between 1 and 3 in the afternoon; that during those hours there are always two men detached in front of the entrance to his office, one across the street and one on his side; that these men stop or try to stop each and everyone of his clients and tell them all sorts of things with regard to the practice of petitioner and detrimental thereto; that he himself has heard these remarks on numerous occasions from his office; that this state of affairs makes the practice of his profession difficult and uncomfortable; that the men leave as soon as petitioner closes his office. On cross-examination it was brought out that petitioner had been associated with defendant's polyclinic and had left it on July 13, 1935, which was a Saturday and that on the following Monday, July 15, 1935, had established his office where it stands today; that large signs had been put up by petitioner which read more or less in the same terms of those of defendant, i. e. "DISPENSARIO DENTAL —TRABAJOS A PLAZOS" and "TRABAJOS A PLAZOS" but that defendant advertised extractions of teeth at 50 cents whereas petitioner did not; that at the suggestion of Col. Orbeta of the Insular Police, he had added a large sign with petitioner's name on it and that Dr. Biascoechea had never before mentioned or complained of his not having such a large sign; that petitioner always has had a small sign with his name on it, in full view.

Angel Borrero, a policeman, testified that at the request of Dr. Coll Watlington, he had gone to the latter's office to disperse several men who were annoying him; that he arrested two of them for breach of a municipal ordinance for-

bidding crowding on the sidewalk; that the petitioner had often called up the police station to complain of men in front of his office.

Epifanio Jiménez, Antonio Figueroa, and María Carrillo took the stand to corroborate the facts already stated by the petitioner. Epifanio Jiménez described how he took his parents to the petitioner's office to have some teeth extracted and how they were stopped and molested by a man on the sidewalk who told them to go across the street where they would be better assisted, that when they came out the same man told him that Dr. Biascoechea wanted to see him; that he went across the street and waited but Dr. Biascoechea did not come out. Antonio Figueroa and María Carrillo said that they were clients of the petitioner and were stopped by a man in front of his office who told them to go across the street instead and that the petitioner was deficient in his practice and would charge them more than Dr. Biascoechea.

The above is more or less a summary of the oral evidence presented by the petitioner to support his contention that there were men stationed before his office purposely. In addition thereto, there was introduced and admitted into evidence, a series of seven photographs taken by one Jesús T. Piñero which may have some weight in helping to determine the true state of affairs.

They are taken from petitioner's front porch. Exhibits A and B picture a man in shirt sleeves leaning against a tree on the sidewalk nearest the office apparently talking to a young lady; exhibit C pictures both of them walking into the defendant's clinic across the street; exhibit D shows the same man and another leaning against trees in front of the petitioner's office once more; exhibit E also shows the same man leaning against the tree and a bus which has just gone by; exhibit F shows another man across the street and exhibit G shows both men talking to each other. It is admitted that these pictures were taken on June 11, 1937.

The other important witness for the petitioner was Juan Moreno Torres. His testimony is significant because he was the only one who directly connected the defendant with at least the man in front of the defendant's office, José Verdejo. He said that he was at one time defendant's chauffeur and had taken another by the name of Luis Bayrón, in defendant's car to get Verdejo and had heard Dr. Biascoechea tell Verdejo to stand in front of Dr. Coll's office and tell his petients to come to his, the defendant's clinic, and that if Dr. Coll should tell him anything to assault him, that the defendant would take care of his fine. The trial court expressly discarded the testimony of this witness as not entitled to credit.

Dr. Biascoechea testified fully as to the whole affair. He gave a history of his relationship with Dr. Coll Watlington and another dentist, Dr. Torruella. He admitted both on the stand and in his answer, to having hired Verdejo and others, but insisted that it was only for the purpose of directing his patients to the proper clinic, inasmuch as he had received information from several of them that they had mistakenly gone to petitioner's office and there had been told that the defendant's dental department had been changed. The instructions which he said that he gave to his agents strictly forbade them to criticise or slander the name or practice of any fellow professional, and the servants were only instructed to serve as guides. He admitted that he knew that Verdejo had been convicted of slander against Dr. Coll Watlington and had had to pay a fine and that in spite of that he kept him in his employ, claiming that he had to prevent his patients from going mistakenly to petitioner's office. He said that both District Attorney Romaní and Col. Orbeta had told him that he was doing nothing in violation of law.

Most of the remaining witnesses for the defendant testified that a Mr. Alonso, who was the lessor of the petitioner's office, sat on his front porch and told those who asked him that that was Dr. Biascoechea's dental clinic.

The reading and weighing of the whole evidence has convinced us that its preponderance was sufficient to prove that certain men are stationed almost constantly during office hours, in front of the building where petitioner's office is located and that these men annoy him by stopping his clients and persuading them to visit the defendant's clinic. From this conclusion, even discarding the testimony of Juan Moreno Torres as did the lower court, the evidence, both oral and circumstantial, as well as documentary, leads us, sitting as a court in equity, reasonably to believe that they were there stationed by Dr. Biascoechea and instructed in some way, certainly by word of mouth, to detract clients from the petitioner.

Therefore, we have reached the conclusion that in furtherance of justice and the preservation of public peace, the defendant should be enjoined from stationing any person or persons in front of the petitioner's office for the purpose of persuading clients to abandon him or of interfering in any manner with the peaceful and unmolested enjoyment of his profession.

Mr. Justice Hutchison and Mr. Justice Córdova Dávila took no part in the decision of this case.